Mr. Thomas, this case on document 2-14-1166, Country Mutual Insurance Company, Petco, defendant-appellant, the Cypress Soto Society of Countryside Pet Hotel, Plains of Abilene. Attorney on behalf of the defendant-appellant, Mr. Keith Carlson. Attorney on behalf of Plains of Abilene, Attorney Mr. James P. Williams. Mr. Carlson. As the court notes from the briefs, this is a straightforward case over a question of a duty to defend, interpreted many times by the courts of this state, a question of insurance contract and an underlying lawsuit. This lawsuit is a little unusual. Involved the dog, Snowser, named Boris. I'm sure you've never met Boris. I'm sure he's a fine dog and very good to his master. But this case was a lawsuit that set forth in the pleadings where it was a very simple claim against the Countryside Pet Motel where Boris was born in, which alleged that for a fee, Boris was under the exclusive care of custody control of the pet motel, the country insured, when Boris escaped and was killed, allegedly due to the negligence of the pet motel. The claim was presented and the lawsuit was presented, as I said, alleging those are specific words. Country, which had issued a, which had incepted many, many years before a policy with the kennel, that general liability policy, that had various different coverages, liability coverage, certain property coverages, other various coverages, coverage extensions, crime coverage, pollution, debris, all kinds of different coverages, responded, pointing out that the allegations of the lawsuit squarely triggered an exclusion in the policy for the property, personal property in the care of custody control of the insurer. The exact words of the complaint. Well, the clearly is the subject of the debate, which we need to decide, but let me ask you as a threshold matter. The duty to defend under the case law is law. Thresholds law. Correct. I think to be totally candid with you. The complaint need only present, as the cases say, the possibility, not the probability of recovery under the policy. So for us to reverse, wouldn't we have to find that it was clear that no potential coverage existed for the plaintiff's negligence claim regarding the dog? We have to find it, don't we? Yes, it's a denial of overview, of course, that you're. Can we find that it was clear? Yes, you certainly can, because the case law, including like on the head of the case that I did cite discussing the duty to defend, as my opponent argued, I didn't discuss the duty to defend, but I had cases which cited the Wilken case and associated. Indemnity case. The test is with underlying complaint of legis facts, which is, if true, would exempt the insured from coverage under the policy. The insurer has no duty to defend and they let's fix without knowing it. That triggered the exclusions exactly there. And that's why I cited many cases involving exclusions in the policy, including Western Casualty vs. Brochure, the only Supreme Court citing. You look at the policy grant. Of course, you have a general grant of coverage for property damage or bodily injury, which is typical in a CGL policy and the liability coverage. And then you, if that falls within that coverage, then you look at the exclusions. As Brochure mentioned, in that policy, there are 19 separate exclusions. If any one of them applied, there was no duty to defend or identify. What do the facts allege? We assume those facts are true. The property was in the care, trust and control of the insurer. You couldn't match it. It doesn't require any interpretation or manipulation of the English language. It's the exact wording. And that's why, like the cases associated with the other cases I cited on one of the exclusion cases, half of the case itself involved a care, custody and control exclusion. So it's basically you're saying it was a very clear no-brainer kind of situation. Correct. What happened at trial? Did the trial court try your position? The trial court tried to determine whether or not it was a case of being first-party property coverage with liability coverage. There was extensive discovery below, which I believe was improper. This district, by the way, the Missouri case I cited, talked about how extrinsic evidence on interpreting insurance policy, unless it's an amnesty to be filed first, is not even admissible or proper or to be considered. Here, the court, over objection of us, over an extensive discovery of country personnel, to say, oh, what do you think this means? What do you think that means? Well, the case law says it's this court's interpretation of the policy that controls it. It's not what some employee says this means, not what I say it means. The court interprets the policy under the rules of construction. And here, policies are construed as contracts. There is deference given where there is an ambiguity identified first. But here there was no ambiguity. The court didn't say, well, I find an ambiguity. Well, we can affirm on any basis. We must compare the complaint with the policy, you're right, construe the policy as a whole, take into consideration the amount of the insurance in nature, and the overall purpose of the contract. This is a pet motel, as it were, where people and the owners of the business who got insurance through you know that they have the care and control of animals, correct? Correct. So you don't think they'd be surprised to find out where there's a death of a dog that a third party entrusted to them, they're not covered? Oh, but there's many coverages that they did have coverage for that in the first party coverage already. They had the coverage extension that is applied automatically up to $2,500. They, that's why you're conflating, of course, they had coverage, they had liability coverage, Your Honor, for slips and falls, they had dog bites. I understand that, but... They never had a liability claim like this ever in the history of the company, so it's not a very common thing. The death of the dog falls under personal, what does it fall under in your interpretation? A death of a dog is property, would be property damage. Property damage, wouldn't it be a conversion? I mean, conversion means someone else takes possession of it, takes all your possessory rights, and now the dog is dead, and when the dog is dead... I mean, that's what you sign on the dotted line when you take your sick pet to a vet. They destroy it based upon the fact that you've signed something that indicates that you don't want your best friend forever to endure the pain of a continuing, diminishing life experience. So, why is this property damage not necessarily a conversion? I don't think it meets the elements of conversion. I think elements of conversion were someone else taking possession of someone else. The person that puts the... the vet that puts the dog on her doesn't take possession of the dog. The dog is then cremated, put in the ground, whatever. It's not taking possession contrary to the rights of another person to possession of that animal. They probably give the ashes back to the person, so they have possession of what's left of the animal afterwards. So, there wouldn't be maintained property interest in the property contrary to the interest of the owner. Was the property damage that was supposedly excluded, did it relate to liability based upon tort, or did it relate to liability based upon a bailment? Well, here was liability. Well, I mean, there are different theories within tort. I mean, in bailment, they're alleging that it was in the care custody control of the vet motel that it was essentially a bailment because they were going to... for a fee, they were going to hold the dog and then return the dog at some point in time. And they didn't, and due to their negligence, the property was damaged, i.e. killed, and is no longer... and because they were allegedly negligent in their care custody control of this property, which rarely is exactly the words of exclusion without any ambiguity whatsoever. Does your insurance policy specifically define the term of personal property? It doesn't appear that it was specifically defined. The word personal property, no, it defines property, but it doesn't define the term personal property. The case law answers that. Dogs are animals are personal property under Illinois appellate law, so we already know that. We don't have every... So the owner reading this knows the Illinois appellate law and says, Aha, personal property must be interpreted according to Illinois law. Well, I don't know that we... We don't have any testimony from the owner of the pet, what he meant or what he didn't mean. We have an application, Your Honor, in the very beginning where they applied for certain coverages, they applied for property coverage, and they had building coverage, for example, and a limit of $120,000. They had personal property of others, business property coverage, and they had personal property of others. So they could have got almost any limit of personal property of others, which would be dogs, but they chose not to. So they didn't ask for it, they didn't pay for it, and they didn't get it in any amount, except what happened to be $2,500 of extension. So the fact that they deliberately chose not to get more limits for property coverage, for property that they had in their possession, is not... They didn't get charged for it. They didn't ask for it. They didn't apply for it. There's no evidence that there was some mistake. There's no... And then we have the personal first-party property coverage form, which talks about... That's where the confusion arises, because counsel conflates property with covered property. Well, in the property form, there's two types of property, covered property or not covered property. Those are the terms in that form. Covered property can be... It says in the very beginning, you look at the declaration page for what's purchased. Here, there's three types of covered property. Before we get too far into that, and we're throwing these terms around, and I understand personal property is used in the policy but not defined. Isn't the term animals contemplated to be covered in this policy? Isn't the term animals mentioned here? The term animals is mentioned, but not in the liability coverage. No, it's not mentioned in the liability coverage. Again, it's conflating different coverages. There was not a first-party... Wouldn't that be confusing to the owner? In one part, they see animals. This is a dog kennel. They're going to know that, well, it's personal property is different than animals. Well, I don't know. I mean, I guess that's true. I guess in anything. I mean, why do they need lawyers? People need lawyers to bring lawsuits. They couldn't bring a lawsuit themselves because they wouldn't understand what it means. They wouldn't understand what a bailment was, what a tort was. They wouldn't understand.  So how would they bring this lawsuit to interpret a policy or a lawsuit without a lawyer? I mean, you don't have to have a policy that you have... that the insurer has to have pass a test that I understand what every word means in every legal context. There's a conundrum or an enigma here wherein it would appear that what is happening now is effectively the declaratory judgment that you didn't file in apt time. And your arguments would be, I believe, identical, if not substantially the same. Now, as they would have been had you filed a declaratory judgment action to determine all the things that you're relating to us right now. Am I missing something? No, you couldn't have done either. We could file almost a declaratory judgment in every case where it's clearly not covered. But the Supreme Court says there is no estoppel. There's only estoppel if, when you compare the policy to the complaint, there's coverage. And here, there is none. There's never been explained where is the coverage in the care custody control. It's never been explained by the lower court. There's never been explained by my opponent. Where is the coverage under liability coverage? So the Supreme Court says, no, you do not have to file the declaratory. There's no potential for estoppel if you compare the policy to the complaint and there's no coverage. And it has to be clear. And it's clear. There's no potential. And here it is so clear, the words are identical. You don't even have to add any words. They're matching 100 percent, not 99 percent, 100 percent. And under the, when you ask the question, Your Honor, about the not covered or animals, there's three types of, you know, there is just different types of property in the world. There's real property and there's a situation where real property is the building. There's personal property. There's personal property that can belong to customers. There's business property that can be their kettles and their equipment. And the, so you have to call them different things because they are different types of property. But they're all property. Just like I said in my brief, all drinks are not martinis, but all martinis are drinks. Here we have covered property defined in buildings. If you purchase covered for it, and you did, they apply for it for $120,000. The buildings is easy for any business. Right. And they insured that for $120,000. And they're saying, well, what if they, what if the building they said it would work with $250,000? Well, they purchased $120,000. They purchased business, and it's a 1B. The other property coverage is for business property of theirs, property of the insurer. They purchased, they applied for a limit for that and paid for that and got that. And then the third is personal property of others, which is 1C. And they didn't apply for any of that. They didn't ask for any. They didn't get charged for any. They never paid for any. And personal property of others includes, well, obviously the animals, the animal here is alleged to be someone else's, not the insurer's. It's alleged to be Soto's animal. So it's not its property, and it's someone else's. They didn't purchase any coverage for that under the property coverage. But if they had, there's a list also of things that are not covered, like contraband, certain, you know, various listing accounts, receivable currency. So even if it would fall in the category of a personal property of others, there are certain things that aren't categorized. And it says animals aren't part of personal, part of the property covered unless it's in the care custody control of the insurer. So if they had purchased the personal property of others coverage, and depending on what the limit they purchased, they could have even higher coverage for this animal if they had ever paid for it, if they had ever requested it, if they had ever applied. So they had the coverages to purchase. And here, by coincidence, there is the coverage extension, multiple coverages provided in the policy anyway, just added on, that a maximum of $2,500 that a country tendered in the very beginning without complaining, debating whether the dog's worth $1,000 or $1,500 or $2,500. Here's the limit under the policy under any interpretation. We're going to pay it without question. But the liability claim is squarely excluded. So we're paying the maximum that we can find under the policy, and that's what the trial court below respectfully erred in finding that there was a potential coverage in comparing the policy to this complaint when the exclusion squarely applied on its face. And therefore, respectfully, we ask that this do not be reviewed, that this court reverse the trial court. Would you agree that there are probably at least two different types of declaratory judgments? One being a declaratory judgment where it is clear that declaratory judgments should be rendered to one party as opposed to the other. And then a different type would be a declaratory judgment where it isn't so clear. And it could go reasonably either way, and the judge decides one way or the other. And then on review, we decide whether or not it's either against the manifest way of the evidence or whether it is manifestly erroneous, or he's interpreted or she's interpreted the question of law improperly. So would you agree that there are declaratory judgments and then there are declaratory judgments and some are clear and some aren't so clear? Certainly not. I litigate declaratory judgments all the time. That's what my practice basically is. And judgment of declaratory judgments all the time. And here, though, in the appellate court under insurance policy where it's just comparing the policy to the complaint, it's a de novo review. There's no discretionary or an abuse of discretion or manifest way in this case. It's not the standard for this type of declaratory on this type of ruling. It might be for other declaratories, but on this one, it's not. OK, thank you, sir. You'll have an opportunity to make rebuttal. Good afternoon, Your Honors. May it please the court, counsel. I normally start off when I'm arguing in front of the appellate court deciding case law, but I think in this instance, given what Justice Hudson, the question I asked, and what Your Honor had asked, I want to state a fact which is on dispute in this case, which is controlling on two issues that you raised. And that is simply country companies sold an insurance policy to a business. The name of the business has the word pet motel in it. On the application, the activities listed for the business are dog boarding, dog grooming. Those are the only two things. The premium that was paid by the insurer was based upon 60 kennels, i.e., how many dogs are going to be in your place of business. Do they board cats, too? I think the dog and cats, but from what I understand, most people don't board cats for whatever reason. Yeah, but it would be dogs and cats, animals. Nobody does anything with a cat, actually. They do what they want. Yeah. The premium was based on the risk. The premium is based on risk. The risk here was how many kennels do you have? How many dogs are you going to have? And now country companies is suggesting to this court and to the insured that there's no coverage for bailment and there's no coverage for animals, which means, essentially, there's no coverage under the policy at all. What did they pay a premium for if there wasn't coverage for the coverage? To the extent that they would get $2,500 times 60, correct? No, not times 60. 2,500 times 1. The country company says that that is the maximum. If this was a conflagration and they lost all 60 dogs, assuming they had... $2,500 in coverage is what country companies claims there is. It wouldn't be 60 times 2,500? That's correct. 2,500 aggregate limit, which is under $40 a dog, does not even cover for the funeral expense of a dog. And I put that in my brief, and it's the citation in the record to the policy as well as country companies' interpretation, but that's what it says. It's an aggregate limit. But isn't that clear? Is what clear? What you just said. Or I should say what Mr. Carlson just said. No, not at all. And I'm going to get to that now because you raised probably the most important point in this case, and it was going to be one of the last points I make, but I'm going to move it up to first, which is the type of declaratory actions there are. The issue in this case, the lower court ruled on the basis of a stopper, and that's kind of what you were talking about in asking these questions, what type of declaratory action this is. The case law is so clear that what country companies did here, they're not allowed to do. and then file a declaratory action or get involved in a declaratory action to determine whether there's coverage or not. You have to do that beforehand. You either defend them their reservation of rights or you file a declaratory action. They didn't do either one of those. I pointed out in my brief, which country companies didn't even address in their opening brief, which I argue is a waiver of the entire argument. They didn't address what the standard is, what your order articulated, which the standard is so low. And by the way, another fact which counsel here has mistaken, they didn't deny coverage based upon what the allegations of the complaint were, and the record's clear on that. They denied coverage before the lawsuit was filed. The denial letter went to the insurer before the lawsuit was filed. Not that that really makes a big difference, but to suggest, oh, we compared the allegations of the complaint to this, that's baloney. That's not what the record shows. They denied it, and they also didn't offer $2,500 to my client. According to their records in their denial letter, they offered $2,500 to their own insurer when they denied the coverage before suit was filed, which, again, is not relevant to what the dispute is here. But country companies was required to file a declaratory action or defend them their reservation of rights, and they didn't either. And so the standard is really, really low. They don't get to come in now and start arguing about policy defenses and exclusions. That's what the case law says, and that's what your honor, it has to be so clear that literally there can't be any dispute about it. The standard is so low for coverage to be triggered. So let's look at this case, and I'll tell you where it's not only so low that it meets that standard, but actually even if they were to have filed a DJ in this case first and done it the right way, they still would lose because the policy in this case, as your honor points out, specifically provides coverage for animals. It says it in the policy. That's an issue that they just have not addressed, that country companies hasn't addressed at all. But the policy, and he's making, the counsel's making an argument, well, I'm not bound by what the country company's corporate representative says in the deposition, and I'm not making the suggestion that the country company's representative decides what the policy means. We all know that the court decides what the policy means. But when there's no dispute about what the policy means, because we allege that this is what the policy says, and then I take their corporate representative and they say, yes, I agree, that's what the policy says, it specifically says, and I'm going to read this in the record, but I know you've read it, that it says property not covered, not covered. So there's the first negative. Animals, unless owned by others and boarded by you. It's a double negative, and that's what the court down below found, and that's what country companies agrees means. What this really says is what's covered? Animals. It's a double negative. It says animals aren't covered unless they're owned by someone else and boarded by you. In this case, as counsel admits, the dog in question was owned by someone else and boarded by them. Any reasonable person would read this and say, I have coverage. And all you have to do to affirm is do this, hmm, is that true? Because if you go, hmm, is that true? Because that's the standard. It's so low. You don't have to decide whether there's coverage in this case or not. You really have to decide whether there's the potential for coverage in this case. There seems to be a contradiction to the concept of liability if, in fact, you're talking about dogs owned by the insured or pets owned by the insured. Why would the insured be paid for its own liability in the destruction or injury of its property or its dogs? Well, I don't know if there was insurance coverage. How is it that they are supposed to pay for someone's own negligence? When you say how is who supposed to pay, the insured? Well, when you referenced the double negative and you were talking about other people's dogs, let's assume for the moment that the insured injured its own dog. If it injured its own dog, isn't it against public policy to pay people for their own negligence? No, not at all. People's insurance policies get paid for their own negligence all the time. You can buy a policy for an accident. Is it based on liability as opposed to casualty or indemnification or something? In this example, if I'm driving a car and I run into a telephone pole because I'm texting, the insurance company is going to pay for my car due to my negligence. But it's not based upon liability. It's based upon comprehensive. Sure. Or something other than liability. The policy here, the commercial aspect of the policy here, is what provides coverage. It is the exclusion in the commercial policy that they're claiming precludes coverage. That exclusion, which is the sole basis for their denial, doesn't cover personal property of others. As everyone here has pointed out, it's not defined. And as I pointed out in my brief, the more specific terms take precedence over more general terms. The policy specifically provides coverage for animals. And when asked, and again, not controlling, but this court can certainly look at the policy itself, and Mr. Carlson can certainly address it when he gets time to rebut, there is not any exclusion in the policy. In fact, the word animals is not mentioned in the entirety of the policy anywhere, except for the fact that it provides coverage. So there is no exclusion under the policy that excludes any loss to animals. There is an exclusion that excludes loss to personal property. Let's double negative again, you said earlier. There's two things about the, was it boarded there, your people? It's owned by others and boarded by you, which everybody agrees that's exactly what happened here. And in fact, country companies in their deposition, in their corporate deposition, says that that provides coverage to animals. That's what they testified to, that's what we're alleging. That's the whole nature of the pet motel, isn't it? That is exactly what a pet motel is, which is why I opened with the idea that you, that one would have to actually laugh at the argument that country companies is making, that they sold, and I put this in my brief, this is akin to country companies selling an auto policy and excluding combustible engines. It is the same thing. You can't sell a policy to an auto, to a pet motel and exclude bailment and animals. There's no coverage at all for that. There is none. It doesn't cover anything. And the premium, we go back to, one of the things the court can look at is what was the intent of the parties. The premium was based on that. Was the person who was deposed someone who was capable of making an admission? Yes, it was, because it was a corporate representative that they themselves designated pursuant to a 20681 deposition. So why wouldn't this be an admission? It is an admission. You argued. I did argue that. The court didn't have to because they used the proper analysis that you made and what Your Honor made, which was I don't have to determine whether there's coverage or not. What I have to determine is there's potential for coverage. And because there's potential for coverage here, you don't get to even argue your exclusions, which is what the case law, and by the way, it is required to admit, rightfully so, that in the event that the court finds that there's potential for coverage here, the case is over. You don't even have to determine anything else. You affirm on that ground they're stopped. And that's why you have to file a declaratory action first. Every case that country companies cite in their coverage case, and I went through all of them yesterday and today, in every instance I didn't find, and maybe they're wrong, there was a declaratory action filed to determine coverage during the pendency of the underlying action. In no case was it we're going to abandon our insured and then afterwards we're going to come and make the argument that there's no coverage under the policy. That doesn't happen. And can it happen? It absolutely can. But not under these circumstances because you go back to the first thing that I said. This is a pet hotel. Pet hotels is the name insured. They have two things that they do. Both of them deal with animals and bailment. And country companies are saying we're absolutely positively sure and all three of the justices sitting up on the bench are absolutely sure that there's no coverage for a pet motel when an animal is injured. Because that's not what we contemplate by the insurance. That's what you have to find in order to reverse this case. I don't know if there's any other questions. I don't really have much more to say. I've said everything in my brief. I will again point out that the term, and I started to touch upon this, the term animals, as it's used in the policy, does not mean the same as property or personal property. And that's standard contract construction. Again, something that country companies admits in their 206A1 deposition. They don't mean the same thing because country companies uses the terms differently. And what country companies is trying to do now is saying animals are property and therefore it's excluded. And while animals may be property, they're not property as defined by this policy. And under standard contract construction, they're not. And country companies admit to that in their deposition because the policy specifically says animals are covered. What was the amount of judgment that you received? It was a consent judgment of $55,000, I think $55,000. And were there elements of damage in that $55,000? Are you referring to the underlying judgment or the judgment in this case? In this case. Okay. In this case, I believe the consent judgment was somewhere around $60,000. There was an underlying judgment of $50,000, $5,000 was satisfied by the insured, and then there was an assignment. So in this case, there was a consent judgment entered against country mutual for the full amount of the judgment plus the interest to date and the cost. And that's what the parties agree what the damages are as of the time of judgment. But what I'm trying to find out is how are the damages determined? Were they based upon the depreciated sales price or market value of the animal at the time of its demise? Was it based upon pain and suffering of the animal? What were the elements of damage? In the underlying case? In the underlying case, the damages were based upon the value of the dog, the cost to replace the dog, and the lost income from the dog. The dog was a champion. And in breeding a dog, I happened to have giant schnauzers myself. The last time I bred the dog, it was $22,000 for 11 puppies. A lot of money for dogs. The dogs sell for $2,500 to $3,500 each. The loss of income, apparently. Yes. So the consent judgment encompassed all of that. And there was also sentimental value that was allowed, but the consent judgment was for $50,000 for the total amount. And it was proven up with affidavit from the breeder who sold the dog saying what the value of the dog was, not only what it cost to turn a dog into a champion, which is expensive because there's a lot of traveling involved, but then the income that one derives from having a champion and being able to breed. And that's not an issue in this case. Essentially the cost of replacement and the lost income? Yes. And there's a sentimental value involved in it, too, the dog itself, yes. Okay. I see my time is up. For the reasons I've stated, I think that the appellate court in this case should affirm the lower court because there's really no basis at all to find that there's not the potential for coverage here. Because it goes beyond potential. There's actual coverage here. And for that reason, it should be affirmed. Thank you. Thank you. Mr. Carlson. First of all, quickly on various points, you know, counsel, again, cites about we didn't cite duty to defend law or exclusions. On page 14 of my brief is a discussion from Hanford talking about a care custody control exclusion case and duty to defend. We cited the Elko case. In the Supreme Court, they said if there's no potential coverage to compare them, there's no duty to defend. You know, these insurers had a homeowners policy. We didn't even issue a denial under that policy. We didn't bring a declaratory judgment action under that policy either because it doesn't apply to a business. There's a business exclusion in the policy. The homeowners policy covers by and great. First of all, if you read the policy, you read the claim, and you read the ultimate complaint, and you make a determination, we don't think it's covered. Correct. Don't you assume a certain risk that if you're wrong, the burden after the fact is far lower than it would have been had you filed the declaratory judgment before. I don't know what the burden is. The test is to say there's no complaint to the policy. But the standard is not whether there is coverage but whether there is potential coverage, correct? So isn't this a calculated risk? Correct. I said if the court finds that there is potential coverage when comparing a policy that the court acted correctly, finding we were stopped, then I admitted that. But if it's not, if you compare the exclusion to the words. Right. But when you go off on that, you seem to argue that it's about actual coverage. But it's not. I don't argue about actual coverage. I argue there's no potential coverage. How can there be potential coverage when it says there's no coverage for prompting the care, trust, and control, and the only allegation is to get into care, trust, and control? That's your position. If the allegation was that you got into an automobile and the exclusion was no coverage involving an automobile, those match entirely. There's no actual coverage. There's no potential coverage. They match exactly, just like in many cases. Obviously, there would be no point in raising the exclusion if there wasn't coverage under the coverage grant. That would be nonsensical. I have a final question. How do you respond to his argument when he recited the exclusion, unless the property is owned by others and boarded by you? Isn't that what goes on here every day of the week? There's probably, and there's coverage there for, you know, there never was a liability claim ever in the history of the company for a dog. They have dog bite claims. They have people slipping and falling on the dog poop and get injured. They don't have liability claims where people get injured. That's where value and claims are. Here there was property coverage. He cited you, the property coverage for him. Now, Mr. Lorenzo didn't testify that there was this coverage. In fact, the evidence is uncontradicted that the very coverage grant he cited was never purchased. How can you pick out and say there's coverage for this animal under something that doesn't apply at all? It wasn't applied for. It wasn't purchased. And he cites to the personal property lawyers 1C and says, here's an exception. Look at this coverage here on some form that doesn't apply. You know, Your Honor, we talk about collision coverage and liability coverage. That's the same. Collision coverage might apply regardless of whether you're at fault or not. There's property coverage and there's liability coverage. There's collision coverage, comprehensive coverage, liability coverage. There's something that might be covered. You might be covered for your not for your, if you smash your car while drunk, you might not be covered for the injury to yourself, but you might get your car back because it doesn't depend on fault. Here there's a separate coverage. They could have purchased for a million dollars for all the dogs there. They chose not to. They didn't apply for it. They didn't purchase it. They could have got up for, if 100 dogs were killed and 100,000 each, they could have applied for it. But they didn't. They got the excellent coverage of the animal. What's that? Maybe in their mind, they thought that the coverage. No, it wasn't in this record. Then that's a different claim than what I would have formed the policy. He's making a claim as I want you to interpret a different policy than exists here or different facts. He says we didn't deny the light. I mean, Exhibit B to my brief in the appendix and cited from the record is the letter addressing the lawsuit, the denial of coverage, pointing out the clear custody and pro-exclusion and offering $2,500. Everything he says is not correct about the record or the facts or the policy forms. Mr. DiLorenzo didn't testify that this coverage was purchased. She didn't make any questions. Yes, if this coverage was purchased and you got, there would be coverage for animals, whatever amount you purchased it in. And here, by the fact they didn't purchase it, there was a default coverage of $2,500, which country tendered. So there was coverage for the animal. There's liability coverage for many types of claims. The language is clear on its face. I don't know what, and the court has never, no, the lower court never explained why it wasn't clear on its face. It just said, I see my point and said nothing else. It just said, didn't say, well, I find that this, usually when I see language about exclusions, they say, well, this doesn't fall within that exclusion because the language is different. Or it's not involving an automobile. It's not involving a motorboat or whatever it is. But here, it matches 100%. And the trial perspective aired the maximum coverage of what was offered. And it's confirmed in the record it was offered. There was letters denying the lawsuit for various reasons set forth in this declaratory lawsuit, which if it does match, there is no potential coverage. There's no actual coverage. There's no potential coverage. And therefore, we respectfully, again, ask that the court reverse the trial. Thank you. There will be another recess. There's another case on the call.